UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.                                         **DECISION AND ORDER**
                                                10-CR-318S

KENNETH KASPER and PHYLLIS KASPER,

                Defendant.

Presently before this Court is the Government's motion in limine seeking to (1) introduce certain evidence pursuant to Rule 404(b) of the Federal Rules of Evidence, (2) challenge certain of Defendants' proposed voir dire questions, and (3) compel Defendants to file pretrial submissions. (Docket No. 93.) Also before this Court is Defendants' motion in limine seeking to preclude (1) evidence of Defendants' alleged intent, and (2) evidence of Defendants' New York State tax returns. (Docket No. 96.) For the following reasons, the motions are granted in part, denied in part, and moot in part.

Beginning with the Government's motion, Rule 404 (b) provides, in pertinent part, that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." FED. R. EVID. 404 (b); see also Huddleston v. United States, 485 U.S. 681 (1988). But evidence of other crimes, wrongs, or acts may be admissible for some other purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . . " FED. R. EVID. 404 (b). Under the Second Circuit's "inclusionary approach," other-act evidence can be admitted for any purpose other than to show a defendant's criminal propensity. United States v. LaFlam, 369 F.3d 153, 156 (2d Cir. 2004).

To be admissible, the Rule 404(b) evidence must be:

    (1) offered for a proper purpose (Rule 404(b));

    (2) relevant to a disputed issue (Rule 402);

    (3) of probative value that is not substantially outweighed by its prejudicial effect (Rule 403); and

    (4) subject to an appropriate limiting instruction to the jury, if requested.

See United States v. Edwards, 342 F.3d 168, 176 (2d Cir. 2003).

The government intends to prove that a corporate entity used by Defendants — Exit 12 — was actually a nominee or pass-through entity, and in fact, Defendants received (and failed to report) income directed to Exit 12. To do so, the government intends to offer evidence concerning Defendants' 2002 tax treatment of income they received from leasing property that they owned at 12254 East Main Street, North East, PA ("East Main Property") and concerning lease agreements entered into by Phyllis Kasper and Gray Line for property across the street from the East Main Property.

Although not specified, it appears that the government first intends to introduce documents and testimony demonstrating that before 2002, Defendants directed rental income generated by the East Main Property to a corporate entity referred to as "Exit 12." It then intends to show that beginning in 2002, the rental income was paid to Defendant Phyllis Kasper directly (and not to Exit 12), which generated a Form 1099. Defendants thereafter declared the income on their 2002 Form 1040. The government also intends to present evidence that Defendants falsely told their tax preparer that the East Main Property was previously vacant and generated no income as a way to explain the substantial increase in their income for 2002.

The government intends to introduce this evidence to show that Defendants, not Exit 12, received the income from the East Main Property and that Exit 12 was merely a nominal corporate entity. In addition, the government will offer this evidence to disprove Defendants' anticipated "reliance-on-tax-preparer defense". The government also intends to introduce evidence concerning lease agreements with Gray Line, particularly a waiver of a non-compete clause by Exit 12 that provided no benefit to Exit 12, that the government contends further demonstrates that Exit 12 was a nominee entity.

In this Court's view, this evidence is relevant and is offered for a permissible purpose, which is to show Defendants' intent and lack of mistake, not propensity. Moreover, the probative value of this evidence is not substantially outweighed by its prejudicial effect. Finally, Defendants do not contest the government's contention that this evidence is admissible under Rule 404(b). Consequently, the government's motion in limine is granted as it pertains to this evidence.

The government also intends to offer evidence of written and oral representations made by Defendants' agent, CPA Francis DeDario, during the course of an IRS audit of Defendants' 2001 Form 1040. Specifically, the government seeks to introduce statements DeDario made regarding treatment of Defendants' income and an unsigned Form 1040 that DeDario presented during the audit. Defendants' motion in limine seeks to preclude this evidence.

DeDario reportedly told the investigating agent that Defendants "got smart" when they changed the way they reported rental income in 2002 and that further inquiry into why the income was not reported in 2001 "would open a can of worms." And the Form 1040 presented during the audit purportedly shows the correct income that Defendants should

have reported on their 2001 Form 1040. The government intends to present this evidence to further prove that Exit 12 was a nominee entity and that Defendants actually received the rental income.

The crux of the issue is whether DeDario's statements and the 2001 Form 1040 he drafted are admissible as non-hearsay under Rule 801(d)(2)(D) as statements by a party's agent. More specifically, the issue turns on whether the Power-of-Attorney Form used by Defendants to designate DeDario as their representative authorized DeDario to make such statements. In essence, the motion turns on whether DeDario's statements were outside the scope of his agency.

The parties interpret the Power of Attorney Form 2848 (Rev. 1-2002) executed by Defendants quite differently. The text of the authorization is as follows:

> **Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the authority to execute a request for a tax return, or a consent to disclose tax information unless specifically added below, or the power to sign certain returns. See the Instructions for **Line 5. Acts authorized.**
>
> List any specific additions or deletions to the acts otherwise authorized in this power of attorney:_____

The government maintains that the authorization granted by the Form is broad because it authorizes the representative to, inter alia, "perform any and all acts that I (we) can perform with respect to the tax matters described on line 3 . . . ." As such, the government argues, DeDario's statements and the unsigned Form 1040 he prepared fall

4

within the scope of his agency.

Defendants, on the other hand, rely on the language in the next sentence of the form: "The authority does not include . . . a consent to disclose tax information unless specifically added below . . . ." They argue that this provision expressly bars the representative from disclosing tax information unless such authority is expressly included on the lines below. Defendants did not list anything on the lines below. Consequently, Defendants argue that DeDario's statements concerning Defendants' tax information and the 2001 Form 1040 fall outside of the authorization provided in Form 2848.

This Court has reviewed Form 2848 and the parties' arguments. At the very best, the authorization provided by Form 2848 is ambiguous. The government concedes as much when it relies on the fact that subsequent versions of the form clarify that the "consent to disclose tax information" pertains to a representative consenting to the taxpayers' tax information being disseminated to third parties. But no such clarification was present in the form Defendants' signed, which by its plain terms, can reasonably be read to preclude the disclosure of the taxpayers' tax information unless such authorization is added separately on the lines on the form. Because this is a government form, any ambiguity must be assessed against the government and in Defendants' favor. Consequently, this Court finds that DeDario exceeded the scope of his agency and therefore this evidence is not admissible under Rule 801(d)(2)(D).

This Court further finds that the statements at issue, which appear to be off-the-cuff remarks not intended to convey substantive information, should be precluded under Rule 403 because their probative value is substantially outweighed by their prejudicial effect in that the jury could construe DeDario's statements as his belief, as a Certified Public

5

Accountant, that Defendants' 2001 tax returns were false and that Defendants knew they were false. Worse, the jury could construe the statements as an admission of the same by Defendants. The government's motion is therefore denied and Defendants' motion seeking preclusion is granted.

The remainder of the parties' motions are moot. This Court will conduct voir dire of the venire, and in doing so, will consider the parties' proposed voir dire questions and the objections thereto. Moreover, Defendants have now filed pretrial submissions, thereby rendering the government's request that they be compelled to do so moot. Finally, the government agrees not to introduce Defendants' state tax returns into evidence during its case-in-chief, but reserves its right to do so on rebuttal. Should a rebuttal case be presented, this Court will resolve any issues relating to the state tax returns at that time.

IT HEREBY IS ORDERED, that the Government's Motion in Limine (Docket No. 93) is GRANTED in part, DENIED in part, and MOOT in part.

FURTHER, that Defendants' Motion in Limine (Docket No. 96) is GRANTED in part and MOOT in part.

SO ORDERED.

Dated: January 3, 2013
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court